## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ACADEMY, LTD.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **CWGS GROUP, LLC AND** | § | |
| **GANDER OUTDOORS, LLC** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE PRESIDING:**

Plaintiff Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy" or "Plaintiff") files this its Original Complaint against Defendants CWGS Group, LLC and Gander Outdoors, LLC (collectively, "Defendants" or "Gander"), and will respectfully show the Court the following:

## <u>INTRODUCTION</u>

For years, Academy and Gander Mountain Company ("Gander Mountain") operated and competed respectfully as sporting and outdoors goods retail stores in different regions of the United States with substantially different trademarks and trade dress.  During this time, Gander Mountain's logo and retail stores' look and feel were markedly different than Academy's stores' look and feel.  Recently, that changed.  Defendants now are attempting to revive Gander Mountain's failing business by unlawfully latching on to Academy's successful identity and piggybacking off Academy's strength and position in the market.

Gander Mountain was a failing business.  In March 2017, Gander Mountain filed for Chapter 11 bankruptcy and, in May 2017, Defendants acquired certain assets of Gander Mountain during Gander Mountain's bankruptcy auction, including certain retail store leases and intellectual property rights.  In May 2017, Gander's Chief Executive Officer, Marcus Lemonis, acknowledged that Gander Mountain's bankruptcy meant the business needed to undergo a rebranding to improve its underperforming stores.  *See* https://www.thefirearmblog.com/blog/2017/05/17/gander-mountain-will-be-re-branded-as-gander-outdoors/.  That same month, Defendants launched a rebrand campaign to resume Gander Mountain's failing business as Gander Outdoors, which now competes with Academy for similar consumers in the sporting and outdoors goods market.  As part of that campaign, rather than innovate and develop its own new logo for Gander Outdoors, Defendants initiated a competition that was open to the public and solicited designs for a new logo for Defendants' Gander Outdoors brand and stores.  After receiving hundreds of different logo submissions of varying design, color, size, and style, Defendants chose a logo that blatantly replicates Academy's MAGELLAN OUTDOORS logo, a federally registered trademark.

|  Academy<br>(MAGELLAN OUTDOORS) | Gander Outdoors |
|:---:|:---:|
|  |  |

Beginning in December 2017 and continuing since, Gander further imitated Academy's branding and goodwill by opening Gander Outdoors stores across seventy-five percent (75%) of Academy's footprint, including in Academy's long-time heritage markets, where Academy has

2

successfully operated for decades, with a look and feel that strongly mimics the distinctive look and feel and protected trade dress of Academy's stores, as demonstrated below.

|              **Academy**              |              **Defendants**              |
| :-----------------------------------: | :--------------------------------------: |







Thus, Gander Mountain's failing business has been revived into a growing concern by relying heavily on Academy's investment in intellectual property and long-time goodwill, success, and position in the market, without investing any of the resources or innovation required to innovate and develop its own new intellectual property.  Academy initiates the present action to put an end to Gander's blatant violations of the Lanham Act and infringement of Academy's protected trademarks and trade dress.

**PARTIES**

1.      Plaintiff Academy, Ltd. d/b/a Academy Sports + Outdoors is a Texas limited partnership doing business as Academy Sports + Outdoors, with its principal place of business at 1800 North Mason Road, Katy, Texas 77449.

2.      Upon information and belief, defendant CWGS Group, LLC ("CWGS") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 250 Parkway Drive, Suite 270, Lincolnshire, Illinois 60069.  CWGS may be served with process by serving the Texas Secretary of State, James E. Rudder Building, 1019 Room 105, Austin, Texas, 78701.

3.      Upon information and belief, defendant Gander Outdoors, LLC ("Gander Outdoors") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 250 Parkway Drive, Suite 270, Lincolnshire, Illinois 60069. Gander Outdoors may be served with process by serving the Texas Secretary of State, James E. Rudder Building, 109 Room 105, Austin, Texas, 78701.

**JURISDICTION AND VENUE**

4.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.  Venue is also proper under 28 U.S.C. § 1391(c) because Defendants are companies, and the federal courts in this judicial district have personal jurisdiction over Defendants related to Academy's claims.

4

6.     The acts that are the subject of Academy's claims, including trademark infringement, unfair competition, and other wrongs, were committed by Defendants, in part, in the State of Texas and in this judicial district.  Defendants conduct business through their retail locations in Texas and their Internet website: www.ganderoutdoors.com, all of which improperly use Academy's  Marks.

7.     Defendants' website is an active site allowing consumers to place orders directly through the site.  Texas residents residing in this judicial district are able to purchase products and services directly from Defendants through its website.  Attached here to as Exhibit F are true and correct copies of printouts from Defendants' website allowing shipments to consumers in this judicial district in Texas.

8.     Gander has already opened retail stores in Amarillo, Fort Worth, and Tyler, Texas and, according to its website, it plans to imminently open another retail location in this district at 19302 Interstate 45, Spring, TX 77373.  Therefore, Defendants are doing business in this judicial district and committing acts of infringement, unfair competition, and other wrongs in this judicial district.

9.     As such, Defendants have purposefully availed themselves of the laws of the State of Texas, and therefore, exercising personal jurisdiction over Defendants is fair and proper.

**NATURE OF ACTION**

10.     This action arises from, inter alia, Gander's unauthorized and unlawful use of Academy's valid federal trademark registrations for the MAGELLAN OUTDOORS mark , including U.S. Trademark Registration Nos. 4,559,838, 4,647,920, 5,338,014, 5,487,230, 5,459,746.  *See* Exhibits A-E.  This action further arises from, inter alia, Gander's unauthorized

and unlawful use of Academy's valid common law rights in the MAGELLAN OUTDOORS

 design mark (collectively with the registered  marks, the " Marks").

11.     This action further arises from, inter alia, Gander's unauthorized and unlawful use

of Academy's protected trade dress and its mimicking of Academy's stores' distinctive look and

feel.

12.     Academy seeks injunctive and monetary relief against Gander for the following

wrongful acts:

> (a)     trademark infringement in violation of 15 U.S.C. § 1114 (Section 32 of the Lanham Act);
>
> (b)     unfair competition and trade dress infringement in violation of 15 U.S.C. § 1125(a) (Section 43(a)(1)(A) of the Lanham Act); and
>
> (c)     trademark infringement, unfair competition, unjust enrichment and injury to business reputation under Texas law.

13.     Academy seeks: (1) actual, treble, and exemplary damages from Gander as well

as an accounting of profits; (2) its attorneys' fees and the costs of this action; and (3) a

permanent injunction.

## FACTS

A.     Academy's Business

14.     Academy is a premier sports, outdoors, and recreation lifestyles retailer, operating

more than 250 stores in sixteen (16) states and online through its academy.com website.

Academy offers a broad assortment of goods and services that MAKE IT EASIER FOR

EVERYONE TO ENJOY MORE SPORTS AND OUTDOORS™.

15.     Academy traces its beginnings in the retail industry to 1938, when founder Max

Gochman opened the Academy Tire Shop in San Antonio, Texas.  Over the last eighty (80)

years, Academy has grown into a large and successful retailer of sporting and outdoors goods that meet the recreational, athletic, outdoor, and active pursuits of the entire family.   The Academy name has been in use in connection with its retail business during that time.

16.     Academy has gained enormous amounts of goodwill among consumers over the years and has come to represent a long standing tradition of selling a broad assortment of quality goods and services at competitive prices.

17.     Academy offers a broad assortment of national brand and private label goods, including goods marketed and sold under the MAGELLAN OUTDOORS private label brand.

B.     Academy's MAGELLAN OUTDOORS Private Label Brand

18.     MAGELLAN OUTDOORS is Academy's largest and most successful private label brand, generating millions of dollars in sales each year.   The MAGELLAN OUTDOORS brand spans across several of Academy's product categories, and is an integral part of Academy's merchandise assortment.

19.     Academy is and has been engaged in the sale and marketing of goods under the MAGELLAN OUTDOORS brand and  Marks, depicted below, since at least as early as 2012. *See* Exhibits A-E.

20.     Academy's  Marks consist of a five-sided shape with a curved bottom and two triangular peaks at the top, depicted below a detached line curved downward, all of which are angled slightly to the left.

21.     Academy has continuously and extensively used the  Marks in commerce in connection with its sale of a variety of products under the MAGELLAN OUTDOORS brand in its Academy stores and on the Academy ecommerce website to consumers seeking high-quality products at competitive prices.

22.     As a result of Academy's continuous and extensive use of the  Marks, customers associate the MAGELLAN OUTDOORS brand and the  Marks with high-quality goods at competitive prices.

23.     Academy has acquired considerable and valuable goodwill and wide scale recognition for the  Marks, and the  Marks are distinctive to both the consuming public and the industry.

8

24.     In fact, the ⬡ Marks are routinely seen as representing a national sporting goods brand and MAGELLAN OUTDOORS can be seen mentioned alongside national brands in the press.   *See, e.g*., http://www.wtvm.com/story/38387224/academy-sports-outdoors-is-now-open-in-columbus/ ("Customers can expect to find everyday low prices and a unique product assortment from brands such as Nike, Under Armour, Adidas, Magellan Outdoors and Columbia.").

25.     Academy has expended substantial time, money, and resources marketing, advertising, and promoting its goods sold under the ⬡ Marks, including through in-store marketing and branding, online marketing, direct mail marketing, television advertising, and social media marketing.

26.     The ⬡ Marks also feature prominently in Academy sponsorships and endorsements, which constitute major components of Academy's brand marketing efforts in the United States.

27.     For example, in July 2018, Academy entered into a multimedia sponsorship with ESPN-SEC Network and the Southeastern Conference (SEC) to become the Official Sporting Goods Retailer of the SEC, and the MAGELLAN OUTDOORS brand and ⬡ Marks form a prominent part of this effort.

28.     Academy's use of the ⬡ Marks in sponsorships also include, but are not limited to, its official sponsorship of various professional, collegiate, and amateur sports teams and events, such as the Academy Sports + Outdoors B.A.S.S. Nation presented by MAGELLAN OUTDOORS.   The B.A.S.S. Nation is a global network of locally organized clubs whose

members participate in and support a range of activities, including tournaments, conservation initiatives, and youth programs.

29.     The ⬡ Marks are also a prominent feature of Academy's celebrity endorsements, such as those with ESPN's Marty Smith and Laura Rutledge and Buckventures' Jeff Danker.

30.     As a result of Academy's investment, expenditures, and efforts, the ⬡ Marks have come to signify the quality and value of the MAGELLAN OUTDOORS goods.

31.     The MAGELLAN OUTDOORS brand and the ⬡ Marks have acquired substantial, incalculable distinction, reputation, and goodwill belonging exclusively to Academy.

32.     Academy's registrations for the ⬡ Marks are prima facie proof of validity, ownership, and use of the ⬡ Marks from the original date of filing of the applications, pursuant to 15 U.S.C. § 1057(b), and of the exclusive right to use the registered mark in commerce.

33.     The ⬡ Marks' registrations constitute constructive notice of Academy's claim of ownership, as provided in 15 U.S.C. § 1072.

C.      Academy's Protected, Distinctive, and Well-Known Trade Dress

34.     In addition to its private label brand trademarks, including the  Marks, Academy distinguishes itself from its competitors through its protected, distinctive, and well-known trade dress.

35.     Academy's business model adheres to a value strategy, which has resulted in strong customer loyalty and brand awareness.  Academy's marketing, brand, and trade dress promote value in its stores by offering a broad assortment of high-quality goods at competitively low prices.

36.     Academy's stores have consistent store layouts and look and feel that provide its customers familiarity across its entire store base.  The look and feel of Academy's stores communicates the concepts of broad assortment and value to its customers, is protected, distinctive to Academy, well-known, and differentiates Academy from its competitors.

11

37.     Academy's trade dress consists of:

(a)     a storefront with a white façade, and primary logo that is set off by Academy's distinctive blue color ("Academy-blue") with accents that are Academy-blue, as depicted in the following exemplary images;



Rockwall, TX



Macon, GA



Foley, AL

(b)     a utilitarian interior that foregoes experiential amenities typically present in other sporting goods stores in favor of promoting value by offering a broad assortment of high quality goods at competitive prices, as depicted in the following exemplary images;



(c)    largely unadorned white walls, an industrial ceiling, and white lights inside the stores, as depicted in the following exemplary images;



(d)    Academy-blue in-store signage with white letters and red accents, as depicted in the following exemplary images; and



(e)    employee uniform shirts that are Academy-blue in color and feature the Academy logo in white lettering, as depicted in the following exemplary images.



14

C.    Gander's Misappropriation of Academy's Trademark and Trade Dress

38.    On or about March 10, 2017, Gander Mountain filed for Chapter 11 bankruptcy.

39.    Prior to filing for bankruptcy, Gander Mountain operated a network of retail stores and an ecommerce website for camping, hunting, fishing, and other outdoor apparel and recreation products, under the logo depicted below.



40.    Upon information and belief, Defendants re-launched Gander Mountain's business under a new brand, Gander Outdoors, which competes with Academy for similar customers in the sporting goods and outdoor market.

41.     Upon information and belief, Defendants abandoned the unsuccessful model of the bankrupt Gander Mountain business in favor of assuming a model that misappropriates Academy's successful brand identity.   In fact, Defendants' Chief Executive Officer, Marcus Lemonis, acknowledged that Gander Mountain's bankruptcy meant the business needed to undergo a rebranding to improve its underperforming stores.  For example,



42.     Upon information and belief, rather than expending the resources, time, and capital to develop and innovate their own new and distinct brand identity, Defendants are exploiting Academy's tried and tested model by imitating not only Academy's protected, distinctive and well-known  Marks, but also Academy's protected, distinctive, and well-known trade dress and brand identity, misappropriating Academy's hard earned goodwill in consumer markets where it has long operated and been successful for decades.

43.     Upon information and belief, Defendants have opened at least sixty (60) retail locations—with plans to open at least another six (6) stores in the near future—across nineteen (19) different states.  There is a seventy-five percent (75%) overlap between Academy's sixteen (16) state footprint and Defendants' store openings.

44.     Defendants own and operate three (3) stores in Texas and plan to open another one in this judicial district in Spring, Texas, this year.

45.     Since rebranding in 2017, Defendants have engaged in a campaign of consumer deceit, swapping an unsuccessful brand identity for Academy's successful brand identity by mimicking Academy's protected trade dress and copying Academy's ⬡ Marks, in an attempt to trade on Academy's and the MAGELLAN OUTDOORS brand's goodwill and wrongfully usurp Academy's customers.

D.     Gander Copies Academy's MAGELLAN OUTDOORS Design Mark

46.     In order to select a new logo to go with its re-branded business, Defendants conducted The Gander Outdoors New Logo Contest (the "Contest"), which ran during May and June of 2017, soliciting entrants to submit potential logo designs in digital format for possible selection as Gander Outdoors' new logo.  Attached hereto as Exhibit G is a true and correct copy of the Contest rules.

47.     Upon information and belief, the designs that were submitted to Gander varied widely in sizing, coloring, style, and graphics.  *See, e.g.,* https://www.wideopenspaces.com/gander-outdoors-unveils-new-logo-designer-wins-100-grand-pics/ (last visited November 14, 2018).

48.     After evaluating hundreds of potential designs based on the contest criteria, including "creativity and freshness of the logo," on or around June 29, 2017, Defendants selected the below-depicted, infringing design (the "Gander Outdoors and Design Mark") which completely disregarded the contest criteria of "creativity and freshness" by imitating the Marks.



49.     Almost immediately upon publication of the new logo, social media users called Gander's attention to the striking similarities between the Marks and the Ganders Outdoors and Design Mark.  For example, very soon after Gander's new logo was unveiled, a consumer remarked that the "[Gander Design Mark] looks a lot like the Magellan Outdoors logo…"  *See* Exhibit H at 35-45.

50.     Defendants' Chief Executive Officer, Marcus Lemonis, was aware of Academy's exististing trademarked Magellan Outdoors logo when he changed Gander's logo to the Gander Outdoors and Design Mark, acknolwedging as much when directly questions by members of the public about the striking similarities between the marks:





*See* Exhibit H at 35-45.

51.     Despite Academy's rights in the  Marks, and without Academy's authorization or permission, Defendants adopted the Gander Outdoors and Design Mark and the below-depicted "Gander Design Mark" (collectively, the "Gander Marks") and are using these marks in connection with a broad range of outdoor, hunting, camping, athletic apparel, equipment, and products.

52.     Defendants use the Gander Marks on their website (www.ganderoutdoors.com) and in their stores, as well as on Gander employee uniforms.  Defendants often depict the Gander Mark in Academy-blue, or in white against an Academy-blue background.

53.     The Gander Marks adopted and used by the Defendants are extremely and confusingly similar to the Marks.

54.     Both designs contain circles inlaid with stylized mountain peaks as demonstrated below.

|  Academy's | Defendants' |
| :---: | :---: |
| **MAGELLAN OUTDOORS Logo** | **GANDER OUTDOORS Logo** |




55.    As illustrated above, the mountain peaks in both designs appear to protrude from the bottom of the circle and form two peaks at virtually the same point, making both the negative and positive space in each design very similar.

56.    On or about June 29, 2017, CWGS filed United States Application Serial Nos. 87/511310 and 87/511317 for the Gander Design Mark, and Application Serial No. 87/511320 for the Gander Outdoors and Design Mark, all based on an intent to use the marks in U.S. commerce in Class 35 for "[r]etail store services featuring hunting, fishing, camping, watersports, marine, recreational vehicle, firearms, outdoor recreational equipment, and outdoor recreation related products and services" and "[r]etail store services, mail order services, electronic and mail order catalog services, and computerized on-line ordering services, all in the field of recreational vehicles, recreational vehicle equipment, recreational vehicle accessories, recreational vehicle parts, recreational vehicle supplies, camping equipment, camping accessories and camping supplies," respectively.  *See* Exhibit I.

E.    Gander's Refusal to Cease Using the Infringing Gander Marks

57.    On or about July 13, 2017, Academy sent written notice to Gander demanding that Gander cease use of the Gander Marks or modify the Gander Marks to be sufficiently

different from the  Marks to avoid possible confusion.  Attached hereto as Exhibit J is a true and correct copy of the July 13, 2017 letter.

58.     On or around July 21, 2017, Gander responded that it believed consumer confusion was unlikely due to purported differences between the two logos.  Attached hereto as Exhibit K is a true and correct copy of the July 21, 2017 letter.

59.     Academy wrote to Gander on or around September 21, 2017 and November 9, 2017, reiterating its demand that Gander either cease the use of or modify the Gander Marks to avoid consumer confusion.  Attached hereto as Exhibit L is a true and correct copy of the November 9, 2017 letter.

60.     Gander refused to discontinue its unlawful use of the Gander Marks and, on March 21, 2018, Academy filed its opposition (the "Opposition") to Gander's only application for registration that has been published to date.  The Opposition is pending before the USPTO. Attached hereto as Exhibit H is a true and correct copy of the Opposition.

61.     Despite Academy's opposition to Defendants' registration application, Defendants have continued to engage in the manufacture, distribution, provision, advertising, promotion, offering for sale, and sale of camping, hunting, and outdoors goods using the Gander Marks throughout the United States at its retail stores and in its ecommerce website, as evidenced below.

62.   The image below is from the Gander website: www.ganderoutdoors.com.



63.   The image below is from Gander's Twitter account:



64.   The image below is of the outside of a Gander retail store:



23

65.     The images below are of the Gander employee uniform:



66.     The goods Defendants have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold under the Gander Marks are offered via the same trade channels (online ecommerce websites and domestic retail locations), in the same line of business, and to the same types of consumers as the goods Academy has manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold under the  Marks.

F.     <u>Gander Mimics Academy's Protected, Distinctive, and Well-Known Trade Dress</u>

67.     Gander's campaign to confuse consumers and attempt to exploit Academy's goodwill and intellectual property for its own gain did not stop with copying the Marks.

68.     As Gander began to relaunch its stores as Gander Outdoors in competition with Academy, it abandoned the unsuccessful branding of its bankrupt Gander Mountain concept and copied Academy's successful, protected, distinctive, and well-known trade dress.

69.     Upon information and belief, Gander launched its first rebranded Gander Outdoors store in December 2017.

70.     Prior to Gander's rebranding, Gander Mountain's stores operated under its red and white Gander Mountain logo.  Gander Mountain's stores' trade dress consisted of a red, brown, and green color scheme, featured dark tile and wood floors and finishes, and presented a reserved cabin-type look and feel, including wall mounts of deer and other game animals. Gander Mountain employees sported forest green and khaki vests.

71.     After the rebranding, Gander adopted a look and feel that brazenly imitated Academy's protected, well-known, and distinctive trade dress.  For example, Gander's new stores feature:

(a)     A white and Academy-blue color scheme;

(b)     A storefront with a white façade, and primary logo, featuring the infringing Gander Marks, all set off by Academy-blue accents;

(c)     White and Academy-blue signage inside the stores;

(d)     A utilitarian interior foregoing amenities and the prior wall-mounted game animals for a large amount of product offerings and utilizing largely unadorned white walls, white ceilings and plain white lights; and

(e)     Employees dressed in Academy-blue uniform shirts with the infringing Gander Marks and white text.

72.     A comparison of Defendants' old Gander Mountain stores and uniforms, and new Gander Outdoors stores and uniforms demonstrates Gander's deliberate misappropriation of Academy's distinctive and protected trade dress and successful concept.

25

**Prior to Gander's Rebranding:**    **After Gander's Rebranding:** 

 

 

 

 

*Compare* with *supra* at ¶ 37.

73.     Gander's infringing acts as alleged herein are likely to confuse, mislead, and deceive the relevant consuming public into believing, mistakenly, that Gander's goods originate from, are associated or affiliated with, or otherwise authorized by Academy.

74.     Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Academy's protected trade dress, cause confusion and deception in the marketplace, and divert potential sales of Academy's goods to the Defendants.

75.     Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Academy and to its valuable reputation and goodwill with the consuming public for which Academy has no adequate remedy at law.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

76.     Academy repeats and realleges all preceding paragraphs, as if fully set forth herein.

77.     Academy is the owner of the  Marks.

78.     Academy has used the  Marks in commerce since at least 2012.

79.     Academy's use of the  Marks predates the conclusion of the Contest and Gander's unveiling of the Gander Marks on or around June 29, 2017.

80.     Gander had actual or constructive knowledge of the  Marks before adopting the Gander Marks and has continued to use the Gander Marks despite its knowledge of the  Marks and despite Academy's written objections.

81.     Gander's use of the Gander Marks is not and has never been authorized by Academy.

82.     Gander's continued willful use of the Gander Marks, despite its knowledge of the ⬡ Marks, renders this case exceptional pursuant to Section 35(a) of the Lanham Act.

83.     Gander's unauthorized use in commerce of a logo confusingly similar to the ⬡ Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Gander's goods and services, and is likely to deceive and cause consumers to believe, contrary to fact, that Gander's goods and services are sold, authorized, endorsed, or sponsored by Academy, or that Gander is in some way affiliated with or sponsored by Academy. Gander's conduct therefore constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

84.     Upon information and belief, Gander has committed the foregoing acts of infringement with full knowledge of Academy's prior rights in the ⬡ Marks and with the willful intent to cause confusion and trade on Academy's goodwill.

85.     Gander's conduct is causing immediate and irreparable harm and injury to Academy, and to its goodwill and reputation, and will continue to damage both Academy and its rights in the ⬡ Marks and confuse the public unless enjoined by this Court.

86.     Academy has no adequate remedy at law.

87.     Academy is entitled to, among other relief, injunctive relief and an award of actual damages, Gander's profits, enhanced damages and profits, reasonable attorneys' fees, and costs under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II
## <u>FEDERAL UNFAIR COMPETITION</u>

88.     Academy repeats and realleges all preceding paragraphs as if fully set forth herein.

89.     Gander's unauthorized use in commerce of a logo confusingly similar to the  Marks as alleged herein is likely to confuse and deceive consumers as to the origin, source, sponsorship, or affiliation of Gander's goods and services, and is likely to cause consumers to believe, contrary to fact, that Gander's goods and services are sold, authorized, endorsed, or sponsored by Academy, or that Gander is in some way affiliated with or sponsored by Academy.

90.     Gander's unauthorized use in commerce of a logo confusingly similar to the  Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

91.     Upon information and belief, Gander's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Gander with Academy.

92.     Gander's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93.     Gander's conduct as alleged herein is causing immediate and irreparable harm and injury to Academy, and to its goodwill and reputation, and will continue to both damage Academy and confuse the public unless enjoined by this Court.

94.     Academy has no adequate remedy at law.

95.     Academy is entitled to, among other relief, injunctive relief and an award of actual damages, Gander's profits, enhanced damages and profits, reasonable attorneys' fees, and

costs under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III
### Trade Dress Infringement Under 15 U.S.C. § 1125(a)

96.     Academy repeats and realleges all preceding paragraphs, as if fully set forth herein.

97.     For years, Academy has continuously operated stores with a layout and look and feel that instills in consumers a feeling of broad assortment and value and that constitutes Academy's distinctive, well-known, and protected trade dress, which features:

> (a)     a storefront with a white façade, and primary logo that is set off by Academy-blue with accents that are Academy-blue;
>
> (b)     a utilitarian interior that foregoes experiential amenities typically present in other sporting goods stores in favor of promoting value by offering a broad assortment of high quality goods at competitive prices;
>
> (c)     largely unadorned white walls, an industrial white ceiling, and simple white lights inside the stores;
>
> (d)     Academy-blue store signage with white letters and red accents; and
>
> (e)     employee uniform shirts that are Academy-blue in color and feature the Academy logo in white.

98.     Academy's trade dress is non-functional.

99.     Gander has misappropriated the Academy trade dress by adopting the following Academy-like features which are a complete departure from the Gander Mountain store look and feel:

> (a)     a storefront with a white façade, and primary logo, featuring the infringing Gander Marks, all set off by Academy-blue accents;
>
> (b)     a utilitarian interior that foregoes experiential amenities typically present in other sporting goods stores and eschewing wall-mounted game animals of the failed Gander Mountain for large amounts of product offerings;

(c)    largely unadorned white walls, an industrial ceiling, and simple white lights inside the stores;

(d)    Academy-blue signage with white letters inside the stores; and

(e)    employee uniform shirts that are Academy-blue and feature the infringing Gander Design Mark in white.

100.    Gander's use of its trade dress is confusingly similar to Academy's distinctive, protected, well-known, and non-functional trade dress.

101.    Gander's use of its trade dress is likely to cause confusion, cause mistake, and deceive consumers:

(a)    as to an affiliation, connection, and/or association of Gander and their Gander Outdoors stores with Academy and its Academy Sports + Outdoors stores; and/or

(b)    as to the origin, sponsorship, and/or approval of Gander's goods, services, and/or commercial activities by Academy.

102.    By the aforesaid acts, Gander has infringed upon Academy's rights in its distinctive, protected, well-known, and non-functional trade dress as described above.

### COUNT IV
### Trademark Infringement and Unfair Competition Under Texas Common Law

103.    Academy repeats and realleges all preceding paragraphs, as if fully set forth herein.

104.    The foregoing acts of Gander constitute trademark infringement and unfair competition under the common law of the State of Texas.  As a result of the infringement and unfair competition by Gander, Academy has suffered and will continue to suffer injury and damage in an amount yet to be determined.

105.    The acts of infringement by Gander have resulted in substantial unjust profits and unjust enrichment on the part of Gander in an amount yet to be determined. Such acts of trademark infringement and unfair competition violate Texas common law and have caused great

harm to Academy, for which Academy is entitled to recover any and all remedies provided by Texas common law.

106.    The continuing acts of Gander are jeopardizing the goodwill of Academy and its valuable MAGELLAN OUTDOORS brand, the  Marks, and Academy trade dress, and such acts have caused and will continue to cause irreparable injury to Academy and to the consuming public.  The acts of Gander complained of herein have caused irreparable injury to Academy and to the public, for which there is no adequate remedy at law.

107.    Additionally, or in the alternative, Academy seeks an accounting and its actual and consequential damages as a result of Gander's infringing acts which have resulted in confusion among the public.  Moreover, Academy seeks punitive and enhanced damages for Gander's willful conduct.

## COUNT V
## INJURY TO BUSINESS REPUTATION
## UNDER TEXAS BUSINESS AND COMMERCE CODE §16.29

108.    Academy repeats and realleges all preceding paragraphs, as if fully set forth herein.

109.    The foregoing acts of Gander, resulting in the infringement of Academy's  Marks, have and will continue to destroy the goodwill and reputation established by Academy in connection with its  Marks and its MAGELLAN OUTDOORS brand, thereby causing it irreparable harm.

110.    The foregoing acts of Gander constitute injury to Academy's business reputation in violation of § 16.29 of the Texas Business and Commerce Code.

111.    Upon information and belief, Gander has been unjustly enriched from its wrongful acts.

112. Gander's acts have been willful and deliberate, justifying an award of attorneys' fees.

## JURY DEMAND

Academy demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Academy requests judgment against Gander as follows:

a) Judgment on all counts in favor of Academy;

b) An order declaring that Defendants' unauthorized use of a logo confusingly similar to the  Marks and Academy's trade dress violates the Lanham Act, 15 U.S.C. §§ 1114 and 1125;

c) An order permanently enjoining and restraining Defendants and those in active concert and participation with Defendants from:

1. further infringing, and/or making any use of the  Marks or Academy's trade dress, or any colorable imitations, including the Gander Marks, to advertise, promote, display, sell, or offer any products and services in the sporting and outdoor goods industry;

2. representing, implying, or suggesting to any third party that Defendants or their products or services are affiliated with, sponsored by, licensed by, or otherwise associated with Academy or the MAGELLAN OUTDOORS brand; and

3. otherwise unfairly competing with Academy;

d) An order directing an accounting and judgment be rendered against Gander for:

1. all profits received by Gander as a result of Ganders' infringement and/or unfair competition of the as provided for in U.S.C. § 1117;

2. an award of treble damages to Academy for Gander's willful and deliberate conduct, pursuant to 15 U.S.C. § 1117; and

3. an award to Academy for costs, including reasonable attorneys' fees and disbursement in this action, pursuant to 15 U.S.C. §§ 1114 and 1117; and

e) An injunction permanently enjoining Gander, its owners, employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

1. manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise or promote Gander's goods and services bearing the Gander Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Academy's  Marks;

2. engaging in any activity that infringes Academy's rights in its  Marks or Academy's trade dress;

3. engaging in any activity constituting unfair competition with Academy;

4. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Gander's goods and

services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Academy or (ii) Academy's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Gander;

5.   using or authorizing any third party to use in connection with any business, goods or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Academy or tend to do so;

6.   registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Gander Marks or any other mark that infringes or is likely to be confused with Academy's  Marks, or any goods or services of Academy, or Academy as their source; and

7.   aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

f)   An order granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Gander are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated,

35

affiliated, or otherwise connected with Academy or constitute or are connected with Academy's goods and services.

g) An order directing Gander to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Gander Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Academy's

 Marks, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Gander's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the Gander Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the

Academy's  Marks, and to immediately remove them from public access and view.

h) An order directing Gander to recall and deliver up for destruction or other disposition all goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the

Gander Marks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Academy's  Marks.

i) An order directing Gander to formally abandon with prejudice any and all of its applications to register the Gander Marks or any mark consisting of, incorporating, or containing Academy's  Marks or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry, including but not limited to Application Serial Nos. 87/511,310, 87/511317 and 87/511320.

j) An order directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Gander to file with the court and serve upon Academy's counsel within thirty (30) days after service on Gander of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Gander has complied therewith.

k) An order awarding Academy punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

l) An order declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Academy its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

m) An order awarding Academy interest, including prejudgment and post-judgment interest, on the foregoing sums.

n) An order directing any other relief that the Court may deem appropriate.

Dated: November 16, 2018

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: */s/ Agnes O. Doyle*
Agnes O. Doyle
State Bar No. 24084423
Federal ID No. 2545474
agnes.doyle@hklaw.com
1100 Louisiana Street, Suite 4300
Houston, TX 77002-5227
713-821-7000 (telephone)
713-821-7001 (facsimile)

R. David Donoghue
(*pro hac vice* motion forthcoming)
david.donoghue@hklaw.com
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
312-578-6553 (telephone)
312-578-6666 (facsimile)

Anthony J. Fuga
(*pro hac vice* motion forthcoming)
anthony.fuga@hklaw.com
131 South Dearborn Street, 30th Floor
Chicago, IL 60603
312-715-5771 (telephone)
312-578-6666 (facsimile)

Mark T. Goracke
(*pro hac vice* motion forthcoming)
mark.goracke@hklaw.com
10 Saint James Avenue
Boston, MA 02116
617-305-2146 (telephone)
617-523-6850 (facsimile)

**COUNSEL FOR PLAINTIFF
ACADEMY, LTD.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2018, a true and correct copy of the following was served via the Court's CM/ECF System to all counsel of record.

*/s/ Agnes O. Doyle*
Agnes O. Doyle
