United States District Court
Southern District of Texas
**ENTERED**
October 31, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ACADEMY, LTD., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-18-4366 |
| § | |
| CWGS GROUP, LLC and GANDER § | |
| OUTDOORS, LLC, § | |
| § | |
| Defendants. § | |

MEMORANDUM AND ORDER

Pending is Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Document No. 30). After carefully considering the motion, response, reply, and applicable law, the Court concludes for the following reasons that the motion should be denied.

I. Background

Plaintiff Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy") sells sporting and outdoor goods online and in more than 250 retail stores in sixteen states.[1] After one of Academy's longtime competitors, Gander Mountain, filed for bankruptcy in 2017, Defendants CWGS Group, LLC and Gander Outdoors, LLC (collectively "Gander") acquired Gander Mountain's retail store leases and intellectual property rights and launched a campaign to

---

[1] Document No. 29 ¶ 14 (1st Am. Compl.).

rebrand Gander Mountain as Gander Outdoors, with a new logo and a new look and feel for its stores.[2] Gander has opened at least sixty retail locations in nineteen states, representing a 75 percent overlap with Academy's market.[3]

Academy alleges that its trade dress consists of storefronts with a white facade and a primary logo in "Academy's distinctive blue color ('Academy-blue')" with Academy-blue accents; a utilitarian interior that forgoes "experiential amenities typically present in other sporting goods stores"; largely unadorned white walls with an industrial ceiling and white lights; Academy-blue signs with white letters and red accents; and Academy-blue employee uniform shirts featuring the Academy logo in white letters.[4] Before Gander's rebranding, Gander Mountain stores operated under the red and white Gander Mountain logo, with a red, brown, and green color scheme; dark tile and wood floors and finishes; a "reserved cabin-type look and feel, including wall mounts of deer and other game animals"; and employees wearing forest green and khaki vests.[5] Academy alleges that Gander copied Academy's logo and trade dress, and that Gander Outdoors stores now feature a

---

[2] Id. at 2, ¶¶ 57-60, 86-90.

[3] Id. ¶¶ 61-62.

[4] Id. ¶ 37. Academy's First Amended Complaint includes color photographs of the various aspects of its trade dress, as well as Gander's trade dress before and after the rebranding.

[5] Id. ¶ 88.

white and Academy-blue color scheme, storefronts with a white facade and Academy-blue accents, white and Academy-blue in-store signage, a utilitarian interior forgoing amenities and the previous mounted animals, and employees dressed in Academy-blue shirts with white text.[6]

Academy alleges that the new Gander Outdoors logo infringes Academy's trademarks and that Gander's store redesign copies the look and feel of Academy's stores to take advantage of Academy's goodwill and reputation for value. Academy alleges claims for (1) federal trademark infringement, (2) federal unfair competition, (3) federal trade dress infringement, (4) trademark infringement and unfair competition under Texas common law, and (5) injury to business reputation under Texas Business and Commerce Code § 16.29.[7] This motion is directed only at Academy's claim for trade dress infringement under Rule 12(b)(6).[8]

## II. Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or

---

[6] Id. ¶¶ 89-90.

[7] Id. ¶¶ 94-130.

[8] Document No. 30.

3

admission, its task is inevitably a limited one. *See* <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65.

4

III. Discussion

"Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 251 (5th Cir. 2010) (citation omitted). Trade dress protection may apply to the look and feel of a business, such as the overall "motif" of a restaurant. Id. (citing Two Pesos, Inc. v. Taco Cabana, Inc., 112 S. Ct. 2753, 2555 (1992)). "The purpose of trade dress protection, like trademark protection, is to 'secure the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing products.'" Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH, 289 F.3d 351, 355 (5th Cir. 2002) (quoting Two Pesos, 112 S. Ct. at 2760). To succeed on a claim for trade dress infringement, the plaintiff must show that "(1) the dress qualifies for protection, which requires considering functionality, distinctiveness, and secondary meaning; and (2) that the dress has been infringed, which requires considering the likelihood of confusion." Taco Cabana Int'l, Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1117-18 (5th Cir. 1991) (citation omitted), aff'd, 112 S. Ct. 2753 (1992).

Gander's sole argument is that Academy's trade dress infringement claim in Count III must be dismissed because Academy's

pleading admits that Academy's trade dress is functional.[9] *See* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."); TrafFix Devices, Inc. v. Mktg. Displays, Inc., 121 S. Ct. 1255, 1259 (2001) ("This burden of proof gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional.").

Under the "traditional" definition of functionality, "a product feature is functional, and cannot serve as a trademark, 'if it is essential to the use or purpose of the article or if it affects the cost or quality of an article,'" such that "if a product feature is 'the reason the device works,' then the feature is functional." Eppendorf-Netheler-Hinz, 289 F.3d at 355 (quoting TrafFix, 121 S. Ct. at 1261-62). Additionally, under the "competitive necessity" test, "a functional feature is one the 'exclusive use of which would put competitors at a significant non-reputation-related disadvantage.'" Id. at 356 (quoting TrafFix, 121 S. Ct. at 1261). Although functional features cannot

---

[9] *See* Document No. 32 at 2 (Gander's reply) ("The only issue raised by Gander's motion is whether Academy has pled itself out of Court by alleging that its trade dress, as a whole, serves the functional purpose of communicating a value and variety-based business model.").

6

be protected as trade dress, "a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." Taco Cabana, 932 F.2d at 1119 (citations omitted).

Academy alleges that the trade dress of its stores consists of the following features (which are illustrated by color photographs in paragraph 37 of Academy's First Amended Complaint):

> (a) a storefront with a white façade, and primary logo that is set off by Academy-blue with accents that are Academy-blue;
> (b) a utilitarian interior that [forgoes] experiential amenities typically present in other sporting goods stores in favor of promoting value by offering a broad assortment of high quality goods at competitive prices;
> (c) largely unadorned white walls, an industrial white ceiling, and simple white lights inside the stores;
> (d) Academy-blue store signage with white letters and red accents; and
> (e) employee uniform shirts that are Academy-blue in color and feature the Academy logo in white.[10]

Academy also provides detailed allegations plausibly explaining why many of these features are not functional. For example, Academy alleges that "Academy's integration of Academy-blue into Academy's color scheme serves no utilitarian or functional purpose. Academy could have chosen any color for its color scheme, and it was not limited by, for example, safety reasons"; "Academy gains no functional benefit from utilizing unadorned interior white walls.

---

[10] Document No. 29 ¶ 115.

7

With or without adornments and regardless of color, Academy's walls serve the purpose of defining the space, supporting the roof and preventing anything from outside entering except through the doors. However, white, unadorned walls are a non-functional aspect of Academy's trade dress which its customers have come to identify with Academy"; and "Academy's protected use of its trade dress (to the exclusion of its competitors) does not put Academy's competitors at a non-reputation related disadvantage. For instance, Gander would not be placed at a non-reputation related disadvantage if it were forbidden from copying Academy's trade dress, as evidenced, in part, by Gander Mountain's years-long use of a different, non-infringing color scheme and trade dress."[11]

These allegations amply and plausibly allege at least in large part that the features of Academy's trade dress individually and the combination of those trade dress features as a whole are non-functional under both the traditional and competitive tests. *See* Worth Beauty LLC v. Allstar Prod. Grp., No. 4:17-CV-1682, 2017 WL 5300007, at *5 (S.D. Tex. Nov. 13, 2017) (Atlas, J.) ("While Defendant's characterizations of Plaintiff's proffered trade dress features may ultimately be proven correct, at this incipient stage of the litigation, there is no basis for the Court to definitively conclude, as a matter of law, those trade dress features are indisputably functional. Moreover, even assuming that many or all

---

[11] Id. ¶¶ 39, 46-47, 51-52.

of trade dress elements Plaintiff cites in the Complaint are functional, Defendant . . . ignores the fact that a combination of even functional elements may be entitled to protection. . . . Plaintiff has stated a claim that at least some of its proffered trade dress elements are non-functional and entitled to protection.").

Gander makes no argument as to why Academy's trade dress is functional such that it affects the cost or quality of a store or that Gander is at a competitive disadvantage by having to use, for example, a color scheme other than Academy-blue and white. Instead, Gander focuses on a single half-sentence in Academy's pleading, which states, "The look and feel of Academy's stores communicates the concepts of broad assortment and value to its customers,"[12] and insists that this is an admission that Academy's trade dress is functional because it communicates a "value and variety based business model," which is not protectable under trademark law.[13] Academy in response denies that it has admitted functionality, particularly in light of its detailed allegations that its trade dress is non-functional, and argues that its trade dress serves to identify Academy--which its customers associate with value and variety--as the source of the goods for sale.[14]

---

[12] Id. ¶ 36.

[13] Document No. 30 at 11.

[14] Document No. 31.

In reviewing a motion to dismiss under Rule 12(b)(6), "[t]he complaint must be liberally construed in favor of the plaintiff." Lowrey, 117 F.3d at 247. Although the language in paragraph 36 on which Gander focuses might possibly be construed as an allegation that Academy's trade dress serves a functional purpose, in the context of the surrounding paragraphs, it can also reasonably be construed merely as an allegation that Academy's trade dress identifies its stores as Academy stores, and that customers associate the Academy brand--not the colors blue and white or the sparse store interiors and industrial ceilings themselves--with value and variety.[15] Thus, construing Academy's pleadings in Academy's favor, paragraph 36 does not undermine Academy's detailed and plausible allegations that its trade dress is non-functional. Gander's motion to dismiss, which does not challenge the sufficiency of Academy's pleadings on any other ground, is therefore DENIED.

---

[15] *See* Document No. 29 ¶¶ 35-36 ("Academy's business model adheres to a value strategy, which has resulted in strong customer loyalty and brand awareness. Academy's marketing, brand, and trade dress promote value in its stores by offering a broad assortment of high-quality goods at competitively low prices. Academy's stores have consistent store layouts and look and feel that provide its customers familiarity across its entire store base. The look and feel of Academy's stores communicates the concepts of broad assortment and value to its customers, is protected, distinctive to Academy, well-known, and differentiates Academy from its competitors.").

IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendants' Motion to Dismiss Count III of Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Document No. 30) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 31st day of October, 2019.

*[signature]*
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE